UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-25100-cv-DLG

ALAN WIEGAND and KIMBERLY
SCHULTZ-WIEGAND, Individually and as
Personal Representatives of the Estate of
Chloe Wiegand, deceased minor,

      *Plaintiffs*,

v.

ROYAL CARIBBEAN CRUISES LTD.,

      *Defendant*.
_____/

### ROYAL CARIBBEAN CRUISES LTD.'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CAUSE OF ACTION

Defendant Royal Caribbean Cruises Ltd. ("RCL"), under Federal Rule of Civil Procedure 12(b)(6), seeks dismissal of the Complaint (ECF No. 1) and states:

**Preliminary Statement**

The death of Chloe Wiegand is a sad tragedy. The members of the RCL family, many of whom are parents themselves, are part of the large collective that has been gripped and saddened by the untimely loss of Chloe.

Unfortunately, RCL can no longer limit its expressions to sympathy and support. After months of bearing false and inaccurate accusations, from the Wiegands' attorneys through the press, RCL now faces the legally mandated task of responding to a lawsuit the Wiegands' attorneys did not file in good faith.

This is not a case of an unknowing child approaching an open window and falling out because the window was defective or improperly positioned. Rather, this is a case about an adult man, Chloe's step grandfather who, as surveillance footage unquestionably confirms: (1) walked

up to a window he was aware was open; (2) leaned his upper body out the window for several seconds; (3) reached down and picked up Chloe; and (4) then held her by and out of the open window for thirty four seconds before he lost his grip and dropped Chloe out of the window.

His actions, which no reasonable person could have foreseen, were reckless and irresponsible and the sole reason why Chloe is no longer with her parents. As Puerto Rico's Attorney General, whose justice department is criminally prosecuting Chloe's step grandfather has publicly declared, "[a] careful review of said video confirms, however that [Chloe's step grandfather] is guilty of negligent homicide as charged."[1]

While the video clearly demonstrates the factual misstatements in the Complaint, it is not necessary for the Court to address these since Plaintiffs fail to state a claim upon which relief can be granted. More precisely, Plaintiffs' claims must fail because:

1.  Plaintiffs' injury was caused by Mr. Anello's irresponsible and reckless act of holding Chloe out of a window he knew to be open, and not any purported negligence on the part of RCL.

---

[1] Mr. Anello's actions were captured by two separate video surveillance cameras on the ship. While RCL has avoided releasing them, they were broadcast on Puerto Rican TV and are therefore now in the public domain. *See CBS This Morning, Grandfather offered plea deal in girl's cruise ship death as Puerto Rico TV show airs video*, CBS NEWS (Dec. 18, 2019, 4:40 PM), https://www.cbsnews.com/news/cruise-ship-death-sam-anello-offered-plea-deal-in-death-of-granddaughter-chloe-wiegand-after-video-leaked/. (last visited Dec. 23, 2019). RCL submits the footage from two cameras in five separate files. The first two files contain footage from each camera and in its original format. To view, the Court will need to download a proprietary video player that RCL is contemporaneously submitting. Alternatively, undersigned can provide a laptop computer with the proprietary software already installed. The second and third files contain the identical footage in higher resolution. The fifth file contains a side-by-side view of the two higher resolution videos. RCL is moving to conventionally file the videos with the Clerk and, per the Court's Judicial Assistant, is also submitting the video files and video player to the Court and Plaintiffs' counsel via email.

2. No facts are alleged that would show RCL knew or had reason to know there was any dangerous condition that would result in Chole's death.

3. RCL owed no duty to warn Plaintiffs of the open and obvious danger associated with putting a child through an open window. Such reckless actions require no warning. Individuals merely need to use their basic senses to appreciate the obvious nature of the danger. And:

4. Plaintiffs fail to sufficiently allege that any of RCL's purported acts or omissions was the proximate cause of the incident or that they owed a duty to prevent the unforeseeable and irresponsible acts of Chloe's step grandfather.

For these reasons and those that follow, RCL requests the Court grant their Motion to Dismiss.

**Video Footage Depicting Incident**

Safety is a core value at RCL, which includes the safety of RCL's vessels and the passengers traveling aboard. Because the Complaint misstates and omits key facts leading to the tragic loss, RCL has filed and submitted the video that supports that no unsafe condition existed, or that it contributed to this accident. Although the Court need not consider the video to find that the Complaint should be dismissed for failure to state a cause of action, RCL submits the video because it shows the circumstances that led to this accident. As noted, there is no need for the Court to rule on the clear facts shown in the video in order to grant RCL's motion to dismiss. However, the Court may decide to accept the video's depiction of the accurate facts of what occurred instead of the Plaintiff's unsupported allegations. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("where an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible").

There are two closed-circuit television cameras which captured the events leading to the fall. The still shots taken from the videos show:

1.  Mr. Salvatore Anello, wearing a dark short sleeve shirt (see red circle) following Chloe, wearing a white hat (see second red circle), towards the open window on Deck 11:



2.  When he arrives at the open window, and while Chloe is on the floor, Mr. Anello leans his upper-torso over the wooden railing and out of the window frame for approximately eight seconds:



3. Because Mr. Anello had himself leaned out the window, he was well aware that the window was open. In addition, the windows in question consist of greenish-tinted glass making it open and obvious where a window is open versus closed.

4. And as these photographs and the photos included in the Complaint show, the window was several feet off the deck. Further, the photographs included in the Complaint also show the middle glass panes contain a handle to allow the operable windows to be slid open. (ECF No. 1, Compl. at ¶ 15).

5. Next, Mr. Anello leans down and picks Chloe up, lifting her over the wooden rail towards the open window located several feet off the deck:





6. Mr. Anello stays in front of the open window and exposes Chloe to the open window, which was 11 decks high off the ground, with nothing but a concrete pier below, for approximately 34 seconds at which time she unfortunately fell.



7. The only reasonable conclusion from the video is that Mr. Anello knew the window was open before picking up Chloe. He nonetheless lifted the child over the wooden rail and the open window for a considerable period, recklessly endangering her life. There was no "hidden danger" — Mr. Anello knew the window was open. The video contradicts Plaintiffs'

6

version of events and leaves no room to dispute any fact about the incident. Notwithstanding, for the reasons stated in this Motion, the Court need not consider the video to find the Complaint should be dismissed for failure to state a cause of action.

## Memorandum of Law

### I. Applicable standard

Dismissal for failure to state a claim is warranted "when it appears that the plaintiff has little or no chance of success, i.e., when the complaint on its face makes clearly baseless allegations or relies on legal theories that are indisputably meritless." *Aruanno v. Martin County Sheriff*, 343 F. App'x 535, 536 (11th Cir. 2009); *see Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Under *Twombly* and *Iqbal*, a sufficient factual basis for the allegation must be alleged. A complaint is insufficient if "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*.

The purpose of a motion to dismiss is to "streamline litigation by dispensing with needless discovery and fact-finding." *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989). "As a general rule, motions to dismiss should be resolved as soon as practicable to obviate avoidable discovery costs, especially where a dubious claim appears destined for dismissal." *Ray v. Spirit Airlines, Inc.*, No. 12–61528, 2012 WL 5471793, at *1 (S.D. Fla. Nov. 9, 2012) (citing *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1368 (11th Cir. 1997)).

### II. The general maritime law of the United States applies.

When an injury occurs on navigable waters, federal maritime law governs the substantive legal issues. *See Everett v. Carnival Cruise Lines, Inc.*, 912 F.2d 1355, 1358 (11th Cir. 1990);

*Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984). Maritime law governs passenger suits against cruise lines and exclusively sets substantive liability standards, superseding state substantive liability standards. *See Keefe,* 867 F.2d 1318; *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959). Because this incident occurred while Plaintiffs were passengers aboard RCL's cruise vessel, the general maritime law must be applied.

**III. Plaintiffs do not allege facts to support RCL was on notice, either actual or constructive, of any alleged dangerous condition which caused or contributed to the incident warranting dismissal of Count I (general negligence).**

The applicable standard of reasonable care requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition. *Keefe*, 867 F.2d at 1322. Generalized knowledge of a danger is not enough to meet this notice prerequisite. *See Burdeaux v. Royal Caribbean Cruises, Ltd.*, 562 F. App'x 932, 933 (11th Cir. 2014); *Amy v. Carnival Corp.*, 360 F. Supp. 3d 1345, 1354 (S.D. Fla. 2018) ("[t]hat passengers can become injured as a general proposition is not the specific notice required under Eleventh Circuit law").

The Complaint fails to plead notice because it does not articulate what facts give RCL actual or constructive notice about any dangerous condition associated with the open window. (ECF No. 1, Compl. at ¶ 37). The Complaint also does not allege RCL should have known an adult would raise a small child over and past a wooden rail and over the ledge of an open window where she would eventually fall out. This failure to articulate clear facts supporting the claim warrants dismissal. *See, e.g., Rygula v. NCL (Bah.) Ltd.*, No. 18-24535, 2019 U.S. Dist. LEXIS 147586, at *7 (S.D. Fla. Aug. 28, 2019) (dismissing negligence claim for failure to allege facts supporting actual or constructive notice where the plaintiff alleged injuries after jumping into a

pool he claimed was not adequately covered or secured and in an area were dim lighting prevented him from observing it was mostly drained of water); *Sanchez v. Carnival Corp.*, No. 19-cv-20668, 2019 U.S. Dist. LEXIS 66469, at *3 (S.D. Fla. Apr. 17, 2019) (dismissing negligence claims after finding that "Plaintiff does not allege any facts to support that Carnival knew or should have known the spiral staircase on which Sanchez was injured was a hazard, and if so, how long it knew."); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332 (S.D. Fla. 2016) ("Simply stating that Carnival had knowledge of a dangerous condition, without identifying the dangerous condition, and/or pleading how Carnival had knowledge of the condition, is insufficient.").

Just a few weeks ago, the court in *Zhang v. Royal Caribbean Cruises, Ltd.*, No. 19-20773, 2019 U.S. Dist. LEXIS 199362 (S.D. Fla. Nov. 14, 2019), dismissed a passenger complaint for failure to sufficiently allege RCL had actual or constructive notice of the alleged dangerous condition. In his complaint, the plaintiff-passenger claimed that while on a Mayan ruins shore excursion, the bus he was traveling on struck a road hazard that flung him into the air causing him serious injury. *Id.* at *5-6. Arguably, the *Zhang* complaint asserted more specific allegations as to RCL's notice yet it could still not survive dismissal:

> In the face of Royal Caribbean's motion to dismiss, Zhang insists he has "unquestionably supported" his claims with sufficient facts. (Pl.'s Resp. to Royal Caribbean's Mot. at 7.) In furtherance of his argument, he points to (1) a list of ten bus accidents that have occurred during Royal Caribbean excursions over the last ten years; (2) Royal Caribbean's initial approval and yearly inspections of the Excursion Operators; and (3) Zhang's allegation that the excursion was "unreasonably dangerous" based on the "dangerous operation of the bus at high speeds in light of the road conditions," "the inadequate supervision of the bus operations," and Royal Caribbean's lack of knowledge regarding the identity and qualifications of the operator of the bus. (*Id.* at 7-8 (quoting Compl. at ¶¶ 29-30, 59, 66-67).) None of these allegations, however, either separately or together, amount to actual facts that

9

>would plausibly show that Royal Caribbean knew or had reason to know that the bus Zhang rode in would be driven over a pothole in such a way that would result in injury.

*Id.* at *11-12.

Here, Plaintiffs list no prior substantially similar incident or problems that would have placed RCL on notice of any dangerous condition associated with the open window on Deck 11. *See generally id.* at *12 ("the ten accidents Zhang lists have no apparent connection to the incident that resulted in Zhang's injuries" and "'there is no explanation as to *how* these incidents put [RCL] on notice.'" (emphasis in original and citation omitted)). Only a vague reference to "prior incidents" is contained in the Complaint with absolutely no expansion. (ECF No. 1, Compl. at ¶ 37). Plaintiffs fail to identify a single similar incident aboard an RCL ship where a young child was lifted up by an adult and dropped outside of a clearly open window. They fail to identify a single incident where any child has fallen or been dropped out a similar window. In fact, Plaintiffs fail to identify a single incident where anyone has ever fallen or been dropped out of a similar window such to put RCL on notice the subject window constituted an unreasonable dangerous condition that it needed to protect its passengers from. Plaintiffs' generalized allegations regarding falls from windows (albeit completely untethered from RCL or the cruise line industry in general), *see* Compl. ¶ 23, are insufficient to satisfy the Eleventh Circuit's requirement that a plaintiff identify the existence of "substantially similar" incidents to establish notice. *Tairriol v. MSC Crociere S.A.*, 677 F. App'x 599, 601 (11th Cir. 2017).

Further, Plaintiffs implicitly acknowledge their obligation to demonstrate notice of the allegedly unsafe condition (ECF No. 1, Compl. at ¶ 37) but they do not do not explain how RCL would have acquired knowledge of the alleged dangerous condition. They merely make bare assertions such as "through [their] maintenance and/or inspections." (ECF No. 1, Compl. at ¶

10

37). *Id.* at *13 ("Zhang does not explain how any of Royal Caribbean's alleged inspections of the Excursion Operators could have possibly alerted it to the dangerous condition that ultimately resulted in Zhang's injuries. What was it about these inspections that should have put Royal Caribbean on notice?").

Additionally, the alleged "industry standards" do not place RCL on notice. "[N]on—compliance with certain industry standards does not necessarily show that the non-compliance amounted to a dangerous or unreasonably risky condition." *Howard-Bunch v. Carnival Corp.*, No. 18-cv-21867, 2019 U.S. Dist. LEXIS 35024, at *17 (S.D. Fla. Mar. 3, 2019); *Amy*, 360 F. Supp. 3d at 1356 (holding that "non-binding industry standards do not establish actual or constructive knowledge of a risk-creating condition.") (citing *Mirza v. Holland Am. Line Inc.*, No. C11-1971MJP, 2012 WL 5449682, at *3-4 (W.D. Wash. Nov. 6, 2012)). In *Howard-Bunch*, the plaintiff alleged she suffered injuries after she tripped and fell over a raised threshold. *Id.* at *1. She alleged the threshold violated various building codes and industry standards and that the failure placed the cruise operator on notice. *Id* at *15-16. The court, however, found that "[w]ithout any additional evidence of a cruise line's knowledge of the dangerous condition at issue," lack of compliance with "relevant standards and maritime regulations" cannot satisfy the constructive notice requirement." *Id.* at *16 (citing *Zygarlowski v. Royal Caribbean Cruises Ltd.*, 2013 U.S. Dist. LEXIS 200119, at *6 (S.D. Fla. Feb. 25, 2013)).

Similarly, in *Zygarlowski,* a cruise passenger alleged the cruise operator was placed on notice that a ramp was dangerous because the slope exceeded various recommendations and standards, including those promulgated by the ASTM. *See Zygarlowski,* 2013 U.S. Dist. LEXIS 200119, at *14. But the court found that violation of ASTM and other standards "does not, as a matter of law, establish that Royal Caribbean had actual or constructive notice of an unreasonably

11

dangerous condition." *Id.* The court recognized that "at most, [] Royal Caribbean had notice that the ramp did not comply with the guidelines," but added that "[t]his, however, is not equivalent to having notice of the *danger* that the ramp allegedly created for cruise passengers like Zygarlowski." *Id* at *14-15.

While Plaintiffs contend that ASTM F2006 and 2090 applies here (ECF No. 1, Compl. at ¶¶ 26-27) they fail to explain why these guidelines would be relevant to this situation beyond the naked assertion. Indeed, they cannot do so because, by their own terms, the guidelines only apply to windows in multi-family residential dwellings. ASTM F2006 states: "This safety specification applies ***only*** to devices intended to be applied to windows installed at heights of more than 75 ft7 (23 m) above ground level in ***multiple family dwelling buildings***." *See* § 1.3 *ASTM F2006-17, Standard Safety Specification for Window Fall Prevention Devices for Non-Emergency Escape (Egress) and Rescue (Ingress) Windows, ASTM International* (2017) (emphasis added). Thus, they do not apply here and cannot be considered "industry standard" in the cruise industry. Nonetheless, for the reasons noted above, even assuming arguendo that ASTM standards applied, Plaintiffs Complaint still fails to state a cause of action.

Likewise, a shipowner's corporate safety policies cannot act to form a duty nor could they be the basis of a negligence claim. Several of these rulings were decided in rejecting theories of liability premised on shipowner's adoption of the International Safety Management ("ISM") Code.[2] *See, e.g., Horton v. Maersk Line, Ltd.*, 603 F. App'x 791, 796-97 (11th Cir. 2015) (citing *Aronson v. Celebrity Cruises*, Inc., 30 F. Supp. 3d 1379, 1396 (S.D. Fla. 2014) ("[T]he

---

[2] Under the ISM Code, each ship carrier must develop its own Safety Management System (SMS) which must be approved by the flag state. RCL has a Safety Management System which has been approved by the flag state. The complaint does not allege otherwise nor does it allege in what manner RCL is not in compliance with its SMS. The full text of the ISM is available at the International Maritime Organization's ("IMO") website at www.imo.org.

International Safety Management Code does not create any duties and thus cannot be the basis for a negligence claim against a cruise line."); *Shipton v. Carnival Corp.*, No. 18-25378-CIV, 2019 U.S. Dist. LEXIS 28573, at *3 (S.D. Fla. Feb. 20, 2019) ("the ISM[C] cannot form the basis for a separate negligence claim nor be a part of a negligence claim.").

Plaintiffs' references to other window configurations on other cruise ships, *see* Compl. ¶¶ 28-33, are similarly insufficient to establish notice. *See Sofillas v. Carnival Corp.*, No. 14-23920-CIV-SCOLA/OTAZO-REYES, 2016 WL 5408168, at *2 (S.D. Fla. Apr. 13, 2016) ("direct evidence relating to how other cruise lines operate the hot tubs on their ships is not relevant to the issue of Carnival's alleged negligence").

And to the extent the Complaint contends RCL created the claimed dangerous condition, this allegation fails to remedy the absence of pleading prior notice. *See Pizzino v. NCL (Bahamas) Ltd.*, 709 F. App'x 563, 565 (11th Cir. 2017).

The bare allegations contained throughout the Complaint are insufficient to impute any knowledge of the window being dangerous (especially, given that RCL may assume passengers will use common sense and watch out for their and their child's safety). None of the allegations, either separately or together, amount to actual facts that would plausibly show RCL knew or had reason to know the window was dangerous.

**IV. The failure-to-maintain claim (Count II) also fails because there are no facts supporting that the window area was dangerous, much less that RCL had notice of any danger.**

Like Count I alleging general negligence, Plaintiffs' negligent maintenance claim also fails because it does not allege sufficient facts showing RCL had actual or constructive notice of any unsafe condition calling for maintenance. *See Horne v. Carnival Corp.*, 741 F. App'x 607, 609 (11th Cir. 2018) (requiring notice regarding a failure-to-maintain claim asserted by a passenger

13

against a cruise line); *see generally Pizzino*, 709 F. App'x 563 (rejecting the notion that a cruise line operator could be liable for negligence without actual or constructive notice even if it negligently created or maintained its premises). RCL's liability for the negligence claims, under whatever negligence theory alleged by Plaintiffs in their Complaint, hinges on whether it knew or should have known about the dangerous condition. For the same reasons presented and analyzed in section III of this Motion, however, Plaintiffs have failed to allege a single fact from which the Court might infer RCL either knew or should have known of any dangerous condition relating to the window.

## V. RCL, as a matter of law, did not have a duty to warn of an open and obvious condition.

In Count III Plaintiffs allege RCL was negligent in warning them about the open window. (*See also* ECF No. 1, Compl. at ¶35, subparagraphs b. and c. also presenting failure to warn allegations). But RCL owes no duty to warn of open and obvious conditions. As a matter of law, RCL had no legal obligation to warn passengers that engaging in the reckless act of placing a toddler in front of an open window could result in the toddler falling out of said window.

The standard of care owed by a shipowner to its passengers is reasonable care under the circumstances. *See Kermarec*, 79 S. Ct. at 410. A shipowner is not an insurer of its passenger's safety, and as such, is not liable merely because an accident occurs. *See Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988). A carrier's duty of reasonable care includes a duty to warn passengers of known dangers that may not be apparent to a reasonable passenger— a shipowner has no duty to warn of a open and obvious condition. *See Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018), *N.V. Stoomvaart Maatschappij Nederland v. Throner*, 345 F.2d 472 (5th Cir. 1965); *Luby v. Carnival Cruises, Inc.*, 633 F. Supp. 40 (S.D. Fla. 1986) (presence of a ledge behind a shower curtain open and obvious condition).

Here, common experience dictates that a person can fall through any open window, regardless of design, if they lean out too far, because a window is a purposeful opening in a structure for light and air[3]. This is not a dangerous condition but an apparent and obvious feature of any window. As the cited case law supports, a shipowner is entitled to assume that a passenger will perceive that which would be obvious to him upon the ordinary use of his own senses. *See Smith v. Royal Caribbean Cruises, Ltd.* 620 F. App'x 727, 730 (11th Cir. 2015) (finding that the noticeably murky color of pool water was not a condition that the cruise line needed to warn passengers of because a "reasonable person…would be aware of [it]"). Because of that entitlement there is no duty to give any warning in broad daylight of the presence of an open tinted window, and persons must use their senses to protect themselves from such obvious dangers. *See Magazine v. Royal Caribbean Cruises, Ltd.*, No. 12-23431, 2014 WL 1274130 at *4 (S.D. Fla. Mar. 27, 2014) ("The obviousness of a danger and adequacy of a warning are determined by a 'reasonable person' standard, rather than on each particular plaintiff's subjective appreciation of the danger. Individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed.") (citations omitted). Specifically, a shipowner could properly assume that parents would take precautions to supervise their children and prevent them from falling out windows (especially windows their children cannot reach without an adult lifting them onto it). Because the duty to warn extends only to those dangers that are not apparent and obvious to a passenger, Plaintiffs have failed to state a claim for failure to warn.

---

[3] Plaintiff's negligent design theory similarly fails. *See e.g. Groves v. Royal Caribbean Cruises, Ltd.*, 09-20800-CIV, 2010 WL 11506631, at *2 (S.D. Fla. Dec. 8, 2010), *aff'd*, 463 F. App'x 837 (11th Cir. 2012) (rejecting negligent design claim where the plaintiff failed to establish that RCL actually created the alleged dangerous design); *Rodgers v. Costa Crociere, S.P.A.*, 410 F. App'x 210 (11th Cir. 2010); *Weiner v. Carnival Cruise Lines*, No. 11-CV-22516, 2012 WL 5199604, at *5 (S.D. Fla. Oct. 22, 2012).

Indeed, courts have rejected similar claims outright and held that open windows or glass doors constitute open and obvious conditions against which no liability can attach. *See Pettigrew v Nite-Cap, Inc.*, 63 So. 2d 492 (Fla. 1953) (rejecting the plaintiff's claim of negligence where she walked into a plate glass door and concluding that "the sole proximate cause of [the plaintiff's] injury was her failure to see that which, by the exercise of reasonable care, she should have seen."); *Rodriguez v. U.S.*, 993 F.2d 884 (9th Cir. 1993) ("We agree with the district court that Republic owed Genaro no duty to warn him of the obvious danger posed by an open window nor to alter the window by installing safety bars or screens."). Moreover, in this District it has been held, as a matter of law, that "it is open and obvious that a child could be injured by playing on a railing." *Amy*, 360 F. Supp. 3d at 1357; *compare* Compl. ¶ 20 (alleging "Mr. Anello then lifted Chloe up onto the railing and held Chloe while she leaned forward to bang on the glass . . .").

And, again, even had Plaintiffs alleged a duty to warn, they have alleged no facts supporting RCL knew of any prior accidents, incidents or complaints regarding the window that would have placed them on notice of any dangerous condition. *See Smith,* 620 F. App'x at 730 (courts "need not even reach the defendant's actual or constructive notice of a risk-creating condition if they determine that condition was an open and obvious danger.").

## VI. Plaintiffs fail to plead that RCL was the proximate cause of the incident.

Plaintiffs' allegations on causation are conclusory and plead no facts explaining how or why RCL's purported breaches led to the injury. (See ECF No. 1, Compl. at ¶¶ 36, 42, and 49). Plaintiffs fail to tie their factual allegations to the legal claims. They plead causation in conclusory fashion with no explanation about how or why the alleged acts or omissions caused his injury.

A shipowner owes no duty to prevent unforeseeable incidents. The lack of foreseeability is dispositive, and to impose a duty of care on a shipowner, an incident must be reasonably foreseeable, not just theoretically foreseeable. Accordingly, a court's determination of foreseeability supports a duty only to the extent foreseeability is reasonable, to bring imposition of duty in line with practical conduct. *See generally Francis v. MSC Cruises, S.A.*, No. 18-61463-CIV-BSS, 2019 U.S. Dist. LEXIS 151255, at *9 (S.D. Fla. Sep. 5, 2019) (general foreseeability theory of liability has been rejected because it would convert a shipowner into an insurer of passenger safety). Here, a lack of reasonable foreseeability is dispositive, because RCL had no duty to protect against risks caused by irresponsible caregivers.

Moreover, since the incident was not foreseeable, RCL had no duty to protect Chloe against Mr. Anello's irresponsible conduct. *See Monteleone,* 838 F.2d at 65 (shipowner not an insurer of passenger safety and does not become liable merely because an accident occurs). Mr. Anello has been charged with negligent homicide in Puerto Rico. Critically, RCL does not have a duty to protect against unforeseeable acts committed by a third-party. *See H.S. v. Carnival Corp.*, 16-20331-CIV, 2016 WL 6583693, at *3 (S.D. Fla. Nov. 4, 2016) (where an intervening act is the cause of a plaintiff's injury, carriers may only be liable in negligence where the intervening act was foreseeable.), *aff'd sub nom. H.S. by & through R.S. v. Carnival Corp.*, 727 F. App'x 1003 (11th Cir. 2018). The threshold issue of determining whether a defendant owes this duty turns on whether the defendant had reason to anticipate that the third-party activity would occur on its premises. *Knight v. Philips South Beach, LLC*, NO. 09-20473, 2010 WL 11601873 at *4-5 (S.D. Fla. Nov. 4 2010). Absent similar past conduct, the law will not deem a third-party's act to be foreseeable to the defendant. *Id.* Indeed, in *H.S. by & through R.S. v. Carnival Corp.*, the Eleventh Circuit affirmed the dismissal of the plaintiff's negligence claim on the grounds that the

plaintiff failed to allege that the intervening act by a fellow passenger which caused the plaintiff's injury was reasonably foreseeable to the defendant cruise line in the absence of any prior similar incidents. *See H.S. by & through R.S. v. Carnival Corp.*, 727 F. App'x at 1006 (affirming dismissal of negligence claim where the injury causing act of a fellow passenger was held unforeseeable as a matter of law at the motion to dismiss stage).

Here, Deck 11 of RCL's cruise ship contained an open window—something one might reasonably expect to see on an open air deck of a cruise ship. What was unforeseeable to RCL was that a young child's grandfather would engage in the reckless act of hoisting his granddaughter out of an open window and unfortunately causing her to fall to her demise. Based on the complete absence of any other similar incidents, Anello's inexplicable conduct was in no way an occurrence that RCL could predict or foresee. Indeed, Plaintiffs fail to allege the existence of a single prior occurrence where a passenger held another family member out of an open window and dropped them. As such, Anello's wrongdoing was unforeseeable as a matter of law.

## Conclusion

RCL requests this Court dismiss the Complaint with prejudice.

Dated: January 8, 2020

Respectfully submitted,

| **HAMILTON, MILLER & BIRTHISEL, LLP** | **BOIES SCHILLER FLEXNER LLP** |
|---|---|
| /s/ Jerry D. Hamilton | /s/ Stephen N. Zack |
| Jerry D. Hamilton | Stephen N. Zack |
| Florida Bar No.: 970700 | Florida Bar No. 145215 |
| jhamilton@hamiltonmillerlaw.com | szack@bsfllp.com |
| Carlos J. Chardon | Laselve Harrison |
| Florida Bar No. 517631 | Florida Bar No. 112537 |
| cchardon@hamiltonmillerlaw.com | lharrison@bsfllp.com |

Michael J. Dono
Florida Bar No. 0576492
mdono@hamiltonmillerlaw.com
150 Southeast Second Avenue,
Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690

100 SE Second Street
Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307

*Attorneys for Defendant Royal Caribbean Cruises Ltd.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 8, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or *pro se* parties identified on the following Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of Electronic Filing.

/s/ Jerry D. Hamilton
Jerry D. Hamilton

## **SERVICE LIST**

Jason R. Margulies
Michael A. Winkleman
Jacqueline Garcell
Lipcon, Margulies, Alsina & Winkleman, P.A.
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
jmargulies@lipcon.com
jgarcell@lipcon.com
mwinkleman@lipcon.com
*Attorneys for Plaintiffs*