UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-CV-25100-DLG

ALAN WIEGAND, et al.,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,

      Defendant.

_____/

**PLAINTIFFS' _PRELIMINARY_[1] RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS COMPLAINT
FOR FAILURE TO STATE A CAUSE OF ACTION [D.E. 7]**

      The Plaintiffs, ALAN WIEGAND and KIMBERLY SCHULTZ-WIEGAND, individually and as personal representatives of the Estate of Chloe Wiegand, by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure, hereby file a preliminary response in opposition to Defendant, ROYAL CARIBBEAN CRUISES LTD.'S (at times "Royal Caribbean['s]" or "RCL['s]") Motion to Dismiss [D.E. 7].

**ROYAL CARIBBEAN HAS DEMONSTRABLY LIED TO THIS COURT AND, IN SO DOING, ROYAL CARIBBEAN HAS CREATED A FALSE NARRATIVE TO ACCOMPANY ROYAL CARIBBEAN'S CAREFULLY SELECTED CCTV VIDEO UPON WHICH ROYAL CARIBBEAN BASES ITS MOTION TO DISMISS.**

**PLAINTIFFS' RECENT INSPECTION OF THE SUBJECT SHIP, CONDUCTED BECAUSE ROYAL CARIBBEAN FIRST ANNOUNCED TO PLAINTIFFS ON JANUARY 3, 2020 THAT IT WOULD BE DESTROYING THE SCENE OF THE SUBJECT INCIDENT, REVEALS THAT ROYAL CARIBBEAN'S FACTUAL REPRESENTATIONS TO THIS COURT ARE IRRESPONSIBLE DEFAMATORY LIES CALCULATED AND ADVANCED BY ROYAL CARIBBEAN.**

---

[1] Plaintiffs' response is preliminary because it is without the benefit of Royal Caribbean's CCTV footage from THIRTEEN cameras around the area of the subject incident.  Royal Caribbean has only provided CCTV from two cameras upon which Royal Caribbean has premised its demonstrably false and deceptive narrative to this Court.  Plaintiffs have filed a Motion to Compel addressing the "missing" CCTV from the other eleven cameras. [D.E. 14].

## I. **Brief Introduction**

The instant matter arises out of the death of 18-month-old Chloe Wiegand after she fell down approximately 150 feet through an open glass pane among a long wall of glass adjacent to a children's play area aboard Royal Caribbean's vessel.  The Plaintiffs initiated this matter against Royal Caribbean for its failure to, *inter alia*, abide by or adapt its ship to, the numerous existing codes, standards, guidelines, and recommendations designed and generally implemented to prevent young children from falling through open windows.  Specifically, the Complaint alleges general negligence (Count I), negligent failure to maintain (Count II), and negligent failure to warn (Count III). [D.E. 1].

On January 8, 2020, Royal Caribbean filed a Motion to Dismiss, wherein over five pages are dedicated to presenting and falsely narrating the contents of what Royal Caribbean contends are "two separate video surveillance cameras on the ship" which "captured" "Mr. Anello's actions" during the subject incident. [D.E. 7, pp. 1-7, n. 1].  Not only does Royal Caribbean admit to enhancing the videos, but Royal Caribbean's false statements are also based on video footage from only two cameras when Plaintiffs' counsel identified at least *thirteen* cameras in the area of the incident during their vessel inspection.  Briefly, the revelatory vessel inspection occurred when the Plaintiffs were forced to scramble by Royal Caribbean to conduct said inspection when, after corresponding with the Plaintiffs about their legal claim for nearly six months (since July 9, 2019), Royal Caribbean **first** announced to the Plaintiffs on Friday, January 3, 2020 at 6:43 p.m., that the subject incident area is going to be refurbished starting on January 12, 2020 in Puerto Rico. Because of the earthquakes in Puerto Rico that followed starting on January 6, 2020, the Plaintiffs were then told that the only other available opportunity for inspection of the scene before its destruction would be on Friday, January 10, 2020 in Bridgetown, Barbados.  Accordingly, the Plaintiffs transported as much of its team as possible to Barbados and conducted an inspection as best they could under the very difficult circumstances.  Nevertheless, the vessel inspection proved to be a game changer, definitively revealing Royal Caribbean's deception to this Court within its Motion to Dismiss.

As a result of discovering at least thirteen CCTV cameras on the ship in the area of the subject incident, rather than just two cameras which show deceptive angles of the incident, on January 17, 2020, Plaintiffs filed a Motion to Compel Royal Caribbean to produce all footage from all of the cameras at or around the area and time of the subject incident. [D.E. 14].  Incorporated

in the same motion, Plaintiffs also requested an extension to file their response to Royal Caribbean's Motion to Dismiss upon 14 days from the date Royal Caribbean produces all video footage in order to meaningfully respond to the assertions Royal Caribbean makes regarding such footage in its motion. [Id.].  To date, Plaintiffs' motion [D.E. 14] remains pending.

Accordingly, Plaintiffs file the instant *preliminary* response, without prejudice to filing a complete response if/when this Honorable Court grants Plaintiffs' Motion to Compel.

## II.  ROYAL CARIBBEAN HAS DEMONSTRABLY LIED TO THIS COURT AND, IN SO DOING, ROYAL CARIBBEAN HAS CREATED A FALSE NARRATIVE TO ACCOMPANY ROYAL CARIBBEAN'S CAREFULLY SELECTED DECEPTIVE CCTV VIDEO UPON WHICH ROYAL CARIBBEAN BASES ITS MOTION TO DISMISS.

At the outset of Royal Caribbean's Motion to Dismiss, Royal Caribbean provides the following narrative to accompany CCTV still photos and video, which are demonstrably false statements that Royal Caribbean has made to this Court to introduce its Motion to Dismiss:

1. RCL'S FALSE STATEMENT #1: "Plaintiffs' injury was caused by Mr. Anello's irresponsible and reckless act of holding Chloe out of a window he knew to be open, and not any purported negligence on the part of RCL." [D.E. 7, p. 2].

2. RCL'S FALSE STATEMENT #2: "When he arrives at the open window, and while Chloe is on the floor, Mr. Anello leans his upper-torso over the wooden railing and out of the window frame for approximately eight seconds[.]" [D.E. 7, p. 4, ¶2].

3. RCL'S FALSE STATEMENT #3: "Because Mr. Anello had himself leaned out the window, he was well aware that the window was open." [D.E. 7, p. 5, ¶3].

4. RCL'S FALSE STATEMENT #4: "Mr. Anello stays in front of the open window and exposes Chloe to the open window, which was 11 decks high off the ground, with nothing but a concrete pier below, for approximately 34 seconds at which time she unfortunately fell." [D.E. 7, p. 6, ¶6].

5. RCL'S FALSE STATEMENT #5: "The only reasonable conclusion from the video is that Mr. Anello knew the window was open before picking up Chloe.  He nonetheless lifted the child over the wooden rail and the open window for a considerable period, recklessly endangering her life.  There was no 'hidden danger' – Mr. Anello knew the window was open.  The video contradicts Plaintiffs' version of events and leaves no room to dispute any fact about the incident." [D.E. 7, pp. 6-7, ¶7].

6. RCL'S FALSE STATEMENT #6: "[T]his case is about an adult man, Chloe's step grandfather who, as surveillance footage unquestionably confirms: (1) walked up to a window he was aware was open; (2) leaned his upper body out the window for several seconds; (3) reached down and picked up Chloe; and (4) then held her by and out of the open window for thirty four seconds before he lost his grip and dropped Chloe out of the window.  His actions, which no reasonable person could have foreseen, were reckless and irresponsible and the sole reason why Chloe is no longer with her parents." [D.E. 7, pp. 1-2].

**A.** **The only thing the video footage and narrative does is prove Royal Caribbean's deceitfulness; it certainly does not support dismissal of this action.**

Royal Caribbean's selective and enhanced video footage and accompanying false narrative does not warrant dismissal because the <u>only</u> thing it proves is the extent of Royal Caribbean's deceitfulness.

The Plaintiffs unequivocally maintain that Chloe's grandfather, Salvatore Anello ("Mr. Anello"), did not know the window was open at the time he was holding her.  As explained in the Complaint, "it was not apparent to Mr. Anello that the glass pane in front of him was, in fact, a window that had been slid all the way open" because (1) the window did not have a "single, adequate indication" (such as a decal or a warning) to indicate it was open; and (2) the distance between the window frame and the railing was approximately 18 inches. [Id. at ¶¶17-18].

As a result, Mr. Anello lifted Chloe up so she could bang on the glass of the window he thought was there, as Chloe frequently did at her older brother's hockey games [Id. at ¶20]. (Photographs depicting Mr. Anello and Chloe at her older brother's hockey games are included herein, and they are attached as composite Exhibit 1.) Tragically, however, as Chloe leaned forward, she fell out of the open window and down approximately 150 feet below onto the Pier in San Juan, Puerto Rico, resulting in her death. [D.E. 1, ¶20].





In its Motion to Dismiss [D.E. 7], Royal Caribbean makes the foregoing bold statements about how the incident occurred, and it presents these statements to this Honorable Court as *facts*, when in reality, they are lies based on deceptive camera angles.  Before demonstrating the deceptive camera angles, however, it is important to examine the representations Royal Caribbean made to this Court.

Royal Caribbean states its ". . . *surveillance footage **unquestionably confirms** [Mr. Anello]*: (1) walked up to a window ***he was aware was open***; (2) leaned his upper body ***out the window*** for several seconds;… and (4) then held [Chloe] by and ***out of the open window*** for thirty four seconds before he lost his grip and dropped Chloe out of the window." [D.E. 7, pp. 1-2] (emphasis added).

To support its "unquestionabl[e] confirm[ation]" that Mr. Anello was aware the window was open, Royal Caribbean then goes on to state as fact that "[w]hen [Mr. Anello] arrives at the open window, and while Chloe is on the floor, Mr. Anello leans his upper-torso over the wooden railing and ***out of the window frame*** for approximately eight seconds[.]  Because Mr. Anello had himself ***leaned out the window***, he was well aware that the window was open…. The ***only*** reasonable conclusion from the video is that ***Mr. Anello knew the window was open*** before picking up Chloe." [D.E. 7, pp. 4-6, ¶¶2-3, 7] (emphasis added).

As previously described, Plaintiffs scrambled to conduct a vessel inspection on January 10, 2020, before Royal Caribbean could destroy the scene of the subject incident, the results of which reveal Royal Caribbean's espoused facts for the lies that they are.  (A preliminary copy of the Plaintiffs' Report of Ship Inspection on January 10, 2020 is attached as composite Exhibit 2.)  This is demonstrated in the photographs included in the following pages and in the attached report, which Plaintiffs ask the Court to review in its entirety.

ROYAL CARIBBEAN'S
CCTV OF SAM ANELLO



ROYAL CARIBBEAN'S
CCTV OF SAM ANELLO
(CROPPED AND
ENLARGED)



REENACTMENT PHOTO
TAKEN UNDER CCTV
CAMERA
(MATCHED
PERSPECTIVE)



LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.



ROYAL CARIBBEAN'S CCTV OF MR. ANELLO AND CHLOE WEIGAND (CROPPED AND ENLARGED)

REENACTMENT PHOTO TAKEN TWO STEPS TO THE RIGHT OF CCTV CAMERA

REENACTMENT PHOTO

REENACTMENT PHOTO TAKEN TWO STEPS TO THE RIGHT OF CCTV CAMERA

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

REENACTMENT PHOTOS
TAKEN TWO STEPS TO
THE RIGHT OF CCTV
CAMERA





As evidenced above, the photograph Royal Caribbean has chosen to present this Honorable Court is simply a deceptive angle.  In taking just two steps to the right of the CCTV camera producing that deceptive angle, the significant distance between the railing at which Mr. Anello was standing and the window frame becomes apparent.  This is a crucial point because, in reenacting the incident at the vessel inspection, Plaintiffs' counsel (who is nearly identical in height and torso to Mr. Anello) _could not_ lean "out of the window frame" due to the distance between the railing and the window frame.

In fact, it would have been _physically impossible_ for Mr. Anello to have had his head out



of the window frame with his feet on the deck.  Plaintiffs' counsel, who, as stated, is nearly identical in height and torso as Mr. Anello, could not even _reach_ his head to the window when he was leaning on the railing, let alone be "out of the window frame," as Royal Caribbean falsely claims.  Indeed, in order to even _touch_ the subject window with the very top of his head, Plaintiffs' counsel had to lift his feet at least _seven inches off the ground_, which is depicted on the photo to the right.  But again, Royal Caribbean is claiming Mr. Anello was beyond touching the window with the top of his head; rather, Royal Caribbean is stating as fact that Mr. Anello **"leaned his upper body out of the window for several seconds[.]"** [D.E. 7, p. 2].  **Because this would have been a physical impossibility for Mr. Anello to accomplish with his feet on the deck, Royal Caribbean is lying to this Court.**

Furthermore, Royal Caribbean's false narrative that Mr. Anello was "unquestionably . . . aware [the window] was open," [D.E. 7, p. 1-2], is also contradicted by its own Ship's Doctor's witness statement.  Specifically, the Ship's Doctor, Dr. Marcel Alexander Armond Van Drunick ("Dr. Van Drunick"), submitted a sworn declaration as to the events that occurred shortly after the incident. (The sworn declaration is attached as Exhibit 3.)  Dr. Van Drunick recalls appearing at the scene of the incident and witnessing Mr. Anello "sobbing crying saying: 'I dropped my baby, I dropped my baby.'" (Id. at p. 2.)  At the scene of the incident when Royal Caribbean's doctor asked Mr. Anello what happened, Mr. Anello responded, "[w]hile he was crying he just said: '**_I thought the window was closed_**." (Id.) (emphasis added).

Finally, the CCTV video and stills filed by Royal Caribbean in no way show or support that Mr. Anello held Chloe "out the window for several seconds," as Royal Caribbean has lied to this Court.  In fact, the preliminary copy of the Plaintiffs' Report of Ship Inspection on January 10, 2020, filed as composite Exhibit 2, shows that the inside edge of the subject handrail was nineteen inches from the window opening (*see* Exhibit 2, p. 47).  To have physically held Chloe out the window, Mr. Anello would have required much longer arms than he had.  As the Plaintiffs' reenactment photos (above and attached within Plaintiff's Exhibit 2) show an accurate profile angle of the scene of the incident, they also demonstrate that Chloe was within the ship at all times she was held by Mr. Anello.  Chloe only fell when Mr. Anello tragically leaned her forward to bang on what he believed was a fixed glass panel – as they had done many times before at Chloe's brother's hockey games.[2]

All in all, Royal Caribbean has filed with this Court inaccurate and deceptive CCTV video and a demonstrably false narrative in order to further Royal Caribbean's interests, rather than the truth; while at the same time defaming Mr. Anello and irresponsibly causing further irreparable harm to the Plaintiffs, a family in severe distress.

---

[2] The Plaintiffs pledge to this Court further proof that Royal Caribbean's statement that Mr. Anello held Chloe "out the window for several seconds" is a lie.  Such proof is currently being developed and is expected to be filed by the Plaintiffs within its Supplemental Response in Opposition to Defendant's Motion to Dismiss, if Plaintiffs are permitted by this Court.

III. **DESPITE THE PLAINTIFFS' DEMONSTRATION OF ROYAL CARIBBEAN'S DECEPTION AND FALSE NARRATIVE SURROUNDING ITS FILING OF CCTV STILLS AND VIDEO, THE SCOPE OF THE COURT'S REVIEW ON A MOTION TO DISMISS SHOULD BE LIMITED TO THE FOUR CORNERS OF THE COMPLAINT.**

Importantly, Royal Caribbean's Motion to Dismiss makes detailed (inaccurate) factual allegations that are well outside the four corners of the Complaint. Because of the inflammatory and defamatory accusations contained in Royal's Motion to Dismiss, Plaintiffs were forced to respond herein with *accurate* facts to set the record straight. Nonetheless, Plaintiffs are in no way waiving the right to fully and fairly conduct complete discovery in this matter.

It is well settled that, when analyzing a motion to dismiss, the scope of a court's "review must be limited to the four corners of the complaint." *St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002) (citation omitted). "If the parties present evidence outside of the pleadings, and the district court considers that evidence, then the motion to dismiss is converted into a motion for summary judgment." *Lewis v. Asplundh Tree Expert Co.*, 305 Fed. Appx. 623, 627-28 (11th Cir. 2008) (citations omitted). Herein, should this Honorable Court seek to convert this motion into a summary judgment motion, then Plaintiffs expressly reserve the right to conduct and complete all discovery. Nothing contained herein should be considered any waiver of the right to discovery and the opportunity to adequately respond to a Motion for Summary Judgment.

The Plaintiffs refer to and incorporate by reference their Motion to Strike Video Footage Conventionally Filed [D.E. 13] and Referenced in Defendant's Motion to Dismiss [D.E. 7], which Plaintiffs filed on January 17, 2020. [D.E. 15]. Therein, Plaintiffs discuss the inapplicability of any exception which would allow this Honorable Court to review Royal Caribbean's selective and enhanced video footage at this stage.

The remainder of Plaintiffs' preliminary response addresses Royal Caribbean's baseless arguments that Plaintiffs have failed to state a claim.

IV. **PLAINTIFFS HAVE ADEQUATELY STATED A CAUSE OF ACTION AND, AS SUCH, ROYAL CARIBBEAN'S MOTION TO DISMISS SHOULD BE DENIED.**

A. **Standard Applied to Motions to Dismiss for Failure to State a Claim**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to the Supreme Court, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When considering such a motion to dismiss, the pleadings are construed broadly, and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *See Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006).

**B.** **Counts I & II – General Negligence & Failure to Maintain – Notice is Adequately Alleged**

As stated, Counts I and II allege claims of general negligence and failure to maintain (respectively).  Royal Caribbean moves to dismiss these claims on grounds that Plaintiffs fail to sufficiently allege actual or constructive notice.

In order to state a claim for maritime negligence,[3] a plaintiff must allege that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (citation omitted). The applicable standard of reasonable care "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989).

To that end, "[t]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Holderbaum v. Carnival Corp.*, 87 F. Supp. 3d 1345, 1353 (S.D. Fla. 2015) (citing *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723– CIV, 2012 WL 1792628, at *3 (S.D. Fla. May 15, 2012); *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir. 1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978); *Giorgio v. Holland Am. Line, Inc.*, No. C05–0038JLR, 2006 WL 1042003, at *2 (W.D.

---

[3] It is undisputed that general maritime law applies in this matter. [D.E. 1, ¶8; D.E. 7, pp. 7-8].

Wash. Apr. 4, 2006) ("Regulations that are not binding by force of law, and therefore do not establish negligence *per se*, may nonetheless be admitted for the purpose of aiding the finder of fact in determining the applicable standard of care.")).

As to establishing notice in particular, the *Cook* Court recognized that even *draft* guidelines could be used as evidence that a cruise line defendant was on notice of a dangerous condition. *Cook*, 2012 WL 1792628, at *4.   *Cook* also recognized findings by other courts, wherein "non-binding standards promulgated by the American Society for Testing and Materials [("ASTM")] were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs[.]" *Id.* at *3 (citation omitted).

In another case, *Cox v. Royal Caribbean Cruises, Ltd.*, 10-22232-CIV, 2011 WL 13323086 (S.D. Fla. Aug. 8, 2011), the Court found that the plaintiff made a sufficient showing of "constructive notice" based, in part, on the cruise line's vessel being in violation of the American National Standards Institute guidelines. *Id.* at *1.

Herein, the Complaint includes a litany of standards that Royal Caribbean failed to follow, starting with industry standards defined by ASTM, other cruise lines, and Royal Caribbean itself. [D.E. 1, ¶¶23-33].  For instance, the ASTM standards F2006 and F2090 address safety standards for window protection and provides three types of fall prevention devices for windows: (1) guards, (2) screens, and (3) locking devices so the windows do not open more than four inches. [Id. at ¶26].   Importantly, these ASTM standards were enacted as a direct response to the "high percentage of fatalities and injuries related to falls from windows." [Id. at ¶¶23-24].  For instance, as alleged in the Complaint, "approximately 4,700 children are injured annually in the United States following a fall from a window, and approximately 18 children per year die from such falls." [Id. at ¶23].  Moreover, the Complaint explicitly alleges that Royal Caribbean "knew or should have known of the industry standard set forth by above ASTM standards, yet [its] vessel was not in compliance with such standards, despite the fact that construction for the subject vessel began in or around 2004, and the vessel was later refurbished in 2015 – well after the above ASTM standards were implemented." [Id. at ¶27].

Additionally, in discussing the industry standard by other cruise lines, the Complaint alleges that "[o]ther cruise lines [including Carnival and NCL] comply with the same ASTM standards and/or similar standards in order to protect passengers generally, and children

- 15 -

specifically, from injuries and/or deaths related to falls from windows." [Id. at ¶28]. The
Complaint includes specific photographs from other cruise lines' vessels, which depict windows
that do not open at all and/or do not contain openings of more than four inches. [Id. at ¶¶29-30].
Then, the Complaint goes on to explicitly allege that Royal Caribbean "knew or should have
known of the industry standard set forth by other cruise lines, including, but not limited to, Carnival
and NCL, yet [Royal Caribbean's] vessel was not in compliance with such standards." [Id. at ¶31].

Finally, the Complaint alleges that Royal Caribbean itself complies with the industry
standards in its newer vessels by having glass panes that do not open in the same or similar water
park area for children. [Id. at ¶32]. As alleged in the Complaint, "[t]he fact that [Royal
Caribbean's] newer vessels comply with industry standards on windows… serves as evidence that
[Royal Caribbean] knew or should have known of the foregoing industry standards set forth by the
ASTM and/or other cruise lines." [Id. at ¶33].

These allegations are then reiterated within each count. Paragraph 37 for the general
negligence claim (Count I) and paragraph 43 for the negligent failure to maintain claim (Count II)
state as follows:

> At all times material hereto, Defendant knew of the foregoing conditions causing
> Plaintiff's incident and did not correct them, or the conditions existed for a
> sufficient length of time so that Defendant, in the exercise of reasonable care under
> the circumstances, should have learned of them and corrected them. This
> knowledge was or should have been acquired through Defendant's maintenance
> and/or inspections, prior incidents, and the reasons alleged in the paragraphs
> entitled, "Industry Standard…," above.

[D.E. 1, ¶¶37, 43].

Accordingly, Royal Caribbean's argument that notice is not sufficiently alleged is entirely
without merit based on even a cursory review of the Complaint.[4]  Perhaps recognizing this, Royal
Caribbean relies on three cases to argue that industry standards do not place Royal Caribbean on
notice: *Howard-Bunch v. Carnival Corp.*, No. 18-cv-21867, 2019 U.S. Dist. LEXIS 35024 (S.D.

---

[4] In footnote 3 of its motion, Royal Caribbean also incorrectly argues that Plaintiffs' negligent
design theory fails. In reality, "[u]nder the law of this circuit, Royal Caribbean can only be held
liable for negligent design of the stage ***if it had actual or constructive notice of the allegedly
hazardous condition***." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, 1:12-CV-22105-UU, 2013
WL 11261341, at *7 (S.D. Fla. Apr. 2, 2013) (citing *Groves v. Royal Caribbean Cruises, Ltd.*, 463
F. App'x 837, 837 (11th Cir. 2012)) (emphasis added). Thus, Plaintiffs' allegations concerning
Royal Caribbean's actual or constructive notice is sufficient herein.

Fla. Mar. 3, 2019); *Amy v. Carnival Corp.*, 360 F. Supp. 3d 1345 (S.D. Fla. 2018); and *Zygarlowski v. Royal Caribbean Cruises Ltd.*, 11-21340-CV, 2013 WL 12059607 (S.D. Fla. Feb. 25, 2013). These cases, however, are easily distinguishable.

To begin with, all three cases involve motions for summary judgments, not motions to dismiss.  Further, both cases dealt with standards that did not create a "dangerous condition" if/when they weren't complied with. *See Howard-Bunch*, 2019 U.S. Dist. LEXIS 35024 ("non–compliance with *certain* industry standards does *not necessarily* show that the non–compliance amounted to a dangerous or unreasonably risky condition") (emphasis added); *Amy*, 360 F. Supp. 3d at 1354 ("Carnival knew what the design and dimensions of its railings were, but this knowledge is legally insufficient to impute actual knowledge of danger"); *see also Zygarlowski*, 2013 WL 12059607, at \*7 ("There is no evidence on the record that Defendant was aware that the [noncompliant] slope of the ramp presented a unreasonable danger…").

Contrary to these two cases, however, Royal Caribbean's knowledge of its noncompliance with the ASTM standards pertaining to windows *did in fact* equate to its knowledge of a dangerous condition because, as stated above, the very purpose of the standards being passed was to keep children, like Chloe, from falling out of windows.  And although Royal Caribbean may argue these standards are inapplicable, binding precedent disagrees.  "As related to the ASTM, binding Eleventh Circuit law states that even though the ASTM provides ergonomic design criteria from a human-machine perspective for the design and construction of maritime vessels, such standards are appropriately used when establishing the standard of care in passenger cruise ship cases." *Peck v. Carnival Corp.*, 16-20214-CIV, 2017 WL 7726728, at \*6 (S.D. Fla. July 13, 2017) (citing *Sorrels v. NCL*, 796 F.3d 1275, 1282 (11th Cir. 2015)). "Additionally, where the hazard alleged is not unique to the maritime environment, it is not necessary to apply only maritime standards (which seemingly do not exist)." *Peck*, 2017 WL 7726728, at \*6 (citing *Cook*, 2012 WL 1792628 at \*2).[5]

---

[5] These cases refute Royal Caribbean's argument concerning the applicability of the standards cited in Plaintiffs' Complaint.  Nevertheless, that issue is better left for a motion for summary judgment or a motion *in limine*, but certainly not a motion to dismiss. *See, e.g., Ward v. Carnival Corp.*, 17-24628-CV, 2019 WL 1228063, at \*13 (S.D. Fla. Mar. 14, 2019) (holding that the cruilse line was "free to explore at trial whether those standards should be used in the maritime passenger context, and – if so – whether the standards discussed by [the expert] would have any applicability in the area of the vessel where [the plaintiff's] fall allegedly took place…. [b]ut to entirely prevent that testimony from reaching the jury would be error.").

Royal Caribbean also attacks the sufficiency of other cruise lines establishing the industry standards.  In doing so, Royal Caribbean continues with its theme of deception by quoting the following from the case of *Sofillas v. Carnival Corp.*, 14-23920-CIV, 2016 WL 5408168 (S.D. Fla. Apr. 13, 2016) ("*Sofillas I*"): "direct evidence relating to how other cruise lines operate the hot tubs on their ships is not relevant to the issue of Carnival's alleged negligence[.]" [D.E. 7, p. 13] (citing *Sofillas I*, 2016 WL 5408168, at *2).  What Royal Caribbean fails disclose to this Honorable Court, however, is that the sentence immediately preceding the one it cited is the following: "**To the extent that Carnival needs to rely on other cruise lines' compliance with the VSP to establish its proposition that the VSP is an _industry standard_, such evidence would be _admissible_.**" *Id.* at *2 (emphasis added).  In another ruling on the same case, the *Sofillas* Court explained that, "regardless of whether the VSP may or may not be deemed an industry standard, [the plaintiff's expert] testimony regarding it is '**admissible to show how a reasonable person might have acted**' in the context of Carnival's duty of care." *Sofillas v. Carnival Corp.*, 14-23920-CIV, 2016 WL 5416136, at *7 (S.D. Fla. Apr. 13, 2016) ("*Sofillas II*") (citing *Holderbaum*, 2015 WL 5006071, at *5) (emphasis added).  Therefore, once again, Royal Caribbean's deception is exposed and its own case law supports Plaintiffs' position.

Ultimately, the allegations in Plaintiffs' Complaint are more than sufficient to establish Royal Caribbean's actual or constructive notice.  Although Royal Caribbean gripes as to the lack of specificity with regard to prior incidents, Plaintiffs are "not required to plead evidence, nor even all the facts upon which [their] claim is based." *Gentry v. Carnival Corp.*, 11-21580-CIV, 2011 WL 4737062 (S.D. Fla. 2011).  Indeed, as this Court previously noted, "[a]s a practical matter, a personal injury plaintiff is often unaware of specific facts demonstrating that the defendant knew or should have known of a dangerous condition at the time the lawsuit is filed, before taking discovery." *Heller v. Carnival Corp.*, 191 F. Supp. 3d 1352, 1358 n. 5 (S.D. Fla. 2016) (citing *Ash v. Royal Caribbean*, 13-20619-CIV, 2014 WL 6682514, at *6 (S.D. Fla. Nov. 25, 2014). Discovery will sometimes result in a plaintiff obtaining "evidence that the defendant was aware of prior injuries occurring under similar circumstances." *Heller*, 191 F. Supp. 3d at 1358 (citing *Ash*, 2014 WL 6682514, at *6).

Accordingly, construing Plaintiffs' allegations broadly and viewing them in the light most favorable to the Plaintiffs, Royal Caribbean's arguments concerning notice should be rejected.

**C. <u>Count III – Negligent Failure to Warn – Determination of Whether a Danger was Open and Obvious is a Summary Judgment Issue and Does Not Bar Recovery</u>**

Next, as to Count III, Royal Caribbean argues that Plaintiffs' negligent failure to warn claim should be dismissed because it involves open and obvious dangers for which Royal Caribbean does not owe any duty to warn.

It is undisputed that "an operator of a cruise ship has a duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bahamas), Ltd.*, 654 Fed. Appx. 949, 952 (11th Cir. 2016) (citation omitted).  Importantly, however, courts in this district have repeatedly held that "**the resolution of whether a danger is open and obvious should wait until *after a factual record is developed*.**" *Heller*, 191 F. Supp. 3d at 1359 (citing *Prokopenko v. Royal Caribbean Cruises Ltd.*, 10-20068-CIV, 2010 WL 1524546, at *2 (S.D. Fla. Apr. 15, 2010) ("[T]he open and obvious question requires a context specific inquiry and necessitates development of the factual record before the Court can decide whether, as a matter of law, the danger was open and obvious." (internal quotation marks omitted; alteration added)); *see also Joseph v. Carnival Corp.*, 11-20221-CIV, 2011 WL 3022555, at *4 (S.D. Fla. July 22, 2011) (quoting same)) (emphasis added).

In the present case, Royal Caribbean argues the alleged danger of "fall[ing] through any open window[]" is open and obvious, and as such, Royal Caribbean does not have a duty to warn. But Royal Caribbean, perhaps conveniently, misses the point entirely.  The point of Plaintiffs' Complaint, and this case really, is that it was <u>not</u> obvious that the window was open!  Indeed, had Mr. Anello known that the window was open, he would have never placed Chloe on the railing, let alone let her reach for a glass enclosure that was not there!  This is made evidently clear in the allegations of the Complaint, which are taken as true:

> There was not a single, adequate indication that this wall of glass panes was not actually a wall of fixed glass panes, but instead a wall of glass with glass panes that could actually slide and remain open, as windows. For instance, none of the glass panes, which were mere feet from the kids' H2O Zone, contained a warning, design decal on the glass, or anything to warn passengers, such as Mr. Anello, of the hidden danger that some of the glass pane windows in the middle row may be slid open.

> … Due to the distance between Mr. Anello standing at the wooden rail and the glass pane 18 inches in front of him, it was not apparent to Mr. Anello that the glass pane in front of him was, in fact, a window that had been slid all the way open so that there was no glass at all in the single frame in front of him.

> Consequently, when Chloe approached the wall of glass, Mr. Anello reasonably believed that this was a wall of fixed glass with no openings.

… Mr. Anello then lifted Chloe up onto the railing and held Chloe while she leaned forward to bang on the glass that Mr. Anello and Chloe thought to be in front of them. As Chloe leaned forward, however, there was no glass in the frame in front of her, and she slipped from Mr. Anello's arms, falling through the open pane and down approximately 150 feet below onto the Pier in San Juan, resulting in her death.

[D.E. 1, ¶¶17-20].

It is therefore clear that Mr. Anello did not know the window was open because Royal Caribbean failed to put an "adequate indication," such as a "design decal on the glass, or anything to warn _**passengers**_, such as Mr. Anello, of the _**hidden danger**_ that some of the glass pane windows in the middle row may be slid open." [Id. at ¶17] (emphasis added).  Thus, the issue is not limited only to Mr. Anello.  Rather, Plaintiffs allege it was a "hidden danger" that Royal Caribbean failed to "warn passengers" about. [Id.].

Accordingly, even under the "reasonable person" standard, it cannot be said as a matter of law (as Royal Caribbean asks this Court to find) that a reasonable person would know the wall of glass panes was not actually a wall of fixed glass panes, but instead, would know that *some* (not all) of the glass panes may be slid open, as windows.  Indeed, simply looking at the following photograph which is included in Plaintiffs' Complaint [D.E. 1, p. 4] and below, it is incredibly difficult to identify whether certain glass panes are open or closed:



Further, Plaintiffs' Report of Ship Inspection of January 10, 2020 includes several pages of recently obtained photographs of decks 11 and 12 of the ship, which reveal the "walls of glass" utilized throughout the upper decks of this ship, most of which are fixed panes of glass.  It is a fallacy that Mr. Anello, who had just boarded the ship, casually observed walls of glass – most of which is fixed glass – while focusing his attention on his granddaughter, would definitely know that some of the glass panes less than 50 feet from a children's play area could be slid open. (*See* Plaintiffs' Exhibit 2).  In fact, Royal Caribbean's unmarked sliding and open glass panels existed within inches of furniture, which any young child who would reasonably be expected to be playing in the area could have used to gain access to an open glass panel, exposing them to a 150-foot drop from the ship. (*See* Plaintiffs' Exhibit 2).  Also, the recently obtained demonstrative photos taken at the open subject window illustrate that while standing at the handrail inches away from the window, the panels are so large as to make it difficult to notice any contrast between an open and closed glass panel, if one is unaware and unfocused on the condition. (*See* Plaintiffs' Exhibit 2).

In its motion, Royal Caribbean relies on two cases involving doors and windows: *Pettigrew v. Nite-Cap, Inc.*, 63 So. 2d 492, 492 (Fla. 1953) (involving a door);[6] and *Rodriguez v. United States*, 993 F.2d 884 (9th Cir. 1993) (involving a window).  Notably, however, these two cases are easily distinguishable because they were each decided on a motion for summary judgment – not a motion to dismiss.  This is a critical distinction because, as noted above, the factual record should be developed before the Court determines whether a danger is open and obvious. *See Heller*, 191 F. Supp. 3d at 1359; *Prokopenko*, 2010 WL 1524546, at *2; *see also Joseph*, 2011 WL 3022555, at *4.

If Royal Caribbean *does* want to look at summary judgment cases, then it should review the case of *Poole v. Carnival Corp.*, No. 14-20237-MGC, 2015 WL 1566415 (S.D. Fla. Apr. 8, 2015), which involved a passenger who was injured when she walked into a glass door that she thought was open.  The *Poole* Court granted summary judgment as to the duty to warn claim because "[t]he door had a sticker across its center," along with a "warning sign[.]" *Poole*, 2015 WL 1566415, at *5.

---

[6] After *Pettigrew*, the Third District Court of Appeal disagreed and distinguished the findings, stating as follows: "whether a plaintiff could or should have observed the hazard, as opposed to the question of whether he must realize the significance of and keep in mind that which he admittedly sees or knows, the cases will turn upon their peculiar facts and there will rarely be a controlling precedent." *Harold Corp. v. Herzberg*, 110 So. 2d 683, 685 (Fla. 3d DCA 1959).

Returning to this case, Royal Caribbean cannot make the same showing as the cruise line did in *Poole*, especially at this pleading stage.  Thus, while Royal Caribbean claims dismissal is warranted because Mr. Anello should have used his senses to determine the window was open [D.E. 7, p. 15], *Poole* stands for the proposition that its argument is only valid (1) at the summary judgment stage, and (2) when there was a sticker and a warning sign placed on the door/window. Royal Caribbean had neither a sticker nor a warning sign on the window, making its argument for dismissal without merit.

Furthermore, even if this Court agreed with Royal Caribbean's argument that the open panel in a wall of glass was open and obvious, a potential open and obvious danger "is not necessarily a total bar to recovery" and does not warrant outright dismissal. *See Heller*, 191 F. Supp. 3d at 1359 ("[E]ven when a person engaging in a noncontact sport such as diving knows of an open and obvious danger, the person may still recover damages under the principles of comparative negligence if the elements of the tort have been proven." (citing *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1309 (S.D. Fla. 2011) (internal quotation marks and citation omitted; alteration in original)); *see also Kennedy v. Carnival Corp.*, 18-20829-CIV, 2019 WL 2254918, at \*20 (S.D. Fla. Mar. 6, 2019), *report and recommendation adopted*, 18-20829-CIV, 2019 WL 2254962 (S.D. Fla. Mar. 21, 2019) (citing same).

Accordingly, Royal Caribbean's motion to dismiss Plaintiffs' negligent failure to warn claim should be denied because the open and obvious classification is an issue more appropriate for summary judgment and because, even if classified as open and obvious, Plaintiffs may still recover damages under the principles of comparative negligence.

**D.  Counts I-III – Proximate Causation is Adequately Alleged**

The last argument Royal Caribbean makes as to all three negligence counts is that "Plaintiffs' allegations on causation are conclusory and plead no facts explaining how or why RCL's purported breaches led to the injury." [D.E. 7, p. 16].  But this argument is in direct conflict with the pleading standard articulated in *Twombly* and *Iqbal*, as well as the Federal Rules of Civil Procedure.

To that point, "[t]he federal rules 'do not prescribe a heightened pleading standard for maritime negligence claims[.]'" *Bell v. Beyel Bros., Inc.*, 2:16-CV-14461, 2017 WL 1337267, at \*2 (S.D. Fla. Apr. 7, 2017) (citing *Everhart v. Royal Caribbean Cruises Ltd.*, Civ. No. 07-23098, 2008 WL 717795, at \*3 (S.D. Fla. 2008)).  Therefore, this claim is governed by Rule 8(a)(2),

which only requires the plaintiff to provide a "short and plain statement" giving defendant "fair notice" of the claim. *See Everhart*, 2008 WL 717795, at \*3.  The plaintiff is not, however, required to "detail all the facts upon which he bases his claim," nor is the plaintiff required to "specifically plead every element of a cause of action," so long as there are enough facts to draw reasonable inferences. *Bell*, 2017 WL 1337267, at \*2 (S.D. Fla. Apr. 7, 2017) (citing *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)).

The proximate causation element is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).  It is established where "prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *McCain*, 593 So.2d at 503.  However, "it is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its exact extent." *Id.* (emphasis in original); *see also Bosket v. Broward Cty. Hous. Auth.*, 676 So. 2d 72, 74 (Fla. 4th DCA 1996) ("proximate causation does not require an injury to result *directly* from the tort-feasor's act, but rather proximate causation exists where the injury 'results as a consequence so natural and ordinary as to be regarded as probable'").

For pleading purposes, so long as the plaintiff gives defendant notice of the claim at issue, it is sufficient to plead that the plaintiff was injured due to the fault and/or negligence of the defendant, and list the alleged failures that resulted in the plaintiff's injuries. *See Huang v. Carnival Corp.*, 909 F. Supp. 2d 1356, 1359-60 (S.D. Fla. 2012).[7]  Specifically, the *Huang* Court stated as follows:

> The Court also finds that Plaintiff **sufficiently pleaded a basis for proximate cause.** Federal courts do not require that plaintiffs formulaically recite the elements of a cause of action. The Complaint states that "Plaintiff was injured due to the fault and/or negligence of Defendant Carnival ... as follows," D.E. 1 ¶ 18, and then proceeds to list, in fourteen subparagraphs, the alleged failures on Carnival's part that resulted in Plaintiffs injuries. These allegations point to inadequate flooring, a lack of handrails, a faulty door, and a lack of warning notices as the causes of Plaintiff's slip-and-fall. **These allegations suffice to give Defendants notice of the claim leveled against it.**

---

[7] The *Huang* ruling cited herein was abrogated on other grounds by *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225 (11th Cir. 2014).

*Id.* at 1359-60 (emphasis added); *see also Prokopenko v. Royal Caribbean Cruises Ltd.*, No. 10-20068-CIV, 2010 WL 1524546, at *2 (S.D. Fla. Apr. 15, 2010) (allegation that plaintiff "was caused to fall on water on deck of the ship at or near the swimming pool, causing her serious injury" was "sufficient to draw a reasonable inference of negligence" under *Iqbal*).

Like *Huang*, Plaintiffs herein meet the pleading requirements for proximate causation as to each negligence claim. Specifically, Plaintiffs give a detailed description of the facts of the incident in paragraphs 11-22 of the Complaint. [D.E. 1, ¶¶11-22]. Then, under each count, Plaintiffs allege the specific ways in which Royal Caribbean breached the duty of reasonable care owed to the Plaintiffs. [Id. at ¶¶35, 41, 48]. Immediately thereafter, the next paragraph alleges proximate causation as follows:

### COUNT I – GENERAL NEGLIGENCE

….

The above acts and/or omissions caused and/or contributed to Chloe's untimely death because the subject incident would not have occurred but for such acts and/or omissions.

### COUNT II – NEGLIGENT FAILURE TO MAINTAIN

….

The above acts and/or omissions caused and/or contributed to Chloe's untimely death because the subject incident would not have occurred but for Defendant's failure to adequately inspect and/or maintain the Deck 11 windows aboard the vessel.

### COUNT III – NEGLIGENT FAILURE TO WARN

….

The above acts and/or omissions caused and/or contributed to Chloe's untimely death because the incident would not have occurred had Defendant and/or its agents, servants and/or employees adequately warned and/or communicated the foregoing to the family.

[D.E. 1, ¶¶36, 42, 49].

These allegations are more than sufficient to draw a reasonable inference and give Royal Caribbean notice of Plaintiffs' negligence claims. Requiring Plaintiffs to plead causation in a more precise manner as to each act and omission, for instance, is improper at this stage as it will ultimately be a question of fact. *See Gittel v. Carnival Corp.*, No. 14-CV-23234, 2015 WL 3650042, at *2 (S.D. Fla. June 11, 2015) (declining to take a "formalistic" view for pleading

proximate causation); *see also McCain*, 593 So. 2d at 502 ("the element of proximate causation… is a question of fact").

To that end, in *Bell*, the Court addressed the same argument Royal Caribbean makes herein, when the party sought dismissal because the counterclaim did not "allege *how* his alleged breaches caused the [incident]" and only alleged breaches. *Bell*, 2017 WL 1337267, at *2 (emphasis in original). The Court disagreed, holding that the pleadings alleged enough "actions and omissions from which the Court may reasonably infer" causation. *Id.* After all, "[a]llegations are assessed **<u>cumulatively</u>** such that '[t]here ***need not be a <u>one-to-one relationship</u> between any single allegation and a necessary element of the cause of action*.'" *Id.* (citation omitted) (emphasis added).

The *Bell* Court is not alone. Similarly, in *Jackson-Davis v. Carnival Corp.*, 17-24089-CIV, 2018 WL 1468665 (S.D. Fla. Mar. 23, 2018), the defendant argued that dismissal was warranted because the complaint "lack[ed] any factual information as to how the alleged failure to do any of the acts alleged proximately caused [plaintiff's] death." *Id.* at 2018 WL 1468665, at *4. The Court held that defendant's "argument lack[ed] merit. Indeed, the Complaint alleges that if [plaintiff] had received the appropriate care or treatment, or had been timely evacuated, she would not have suffered the injuries resulting in death. At this stage, that is sufficient." *Id.*

Likewise, in *Marion v. Royal Caribbean Cruise Lines Ltd.*, 13-CV-21290-JLK, 2013 WL 12095148 (S.D. Fla. Sept. 13, 2013), the defendant also argued that the complaint failed to "include facts concerning how Defendant's purported breaches of duty proximately caused or contributed to the Decedent's death." *Id.* at *1. The Court noted that the complaint listed the "breaches of the duty of care," and in the very next paragraph, alleged that "[t]hese acts and/or omissions directly and proximately caused or contributed to the death…" *Id.* The Court also pointed to the facts of the incident alleged in the complaint's preliminary paragraphs. *See id.* Together, the allegations were deemed sufficient to "preclude dismissal at this stage of the proceedings." *Id.*

Returning to the present case, as demonstrated above, paragraphs 36, 42 and 49 all fall in line with the Courts' analyses in *Bell*, *Jackson-Davis*, and *Marion*. Consistent with these cases and the applicable pleading standard, Plaintiffs' allegations are sufficient to plead causation at this stage. Notwithstanding Royal Caribbean's argument, Plaintiffs are <u>not</u> required to plead detailed facts and explanations establishing how <u>each</u> act or omission caused the incident.

***Foreseeability is a question of fact.***  Within its argument concerning proximate causation, Royal Caribbean also moves to dismiss all counts due to the alleged "lack of foreseeability" of the incident.  For example, Royal Caribbean argues that "Mr. Anello has been charged with negligent homicide in Puerto Rico[,]" and that Royal Caribbean "does not have a duty to protect against unforeseeable acts committed by a third-party." [D.E. 7, p. 17].  This argument is, again, without merit because foreseeability is a question of fact.

Notably, it is undisputed that a cruise ship may be liable in negligence for the acts of a third-party if the intervening act was foreseeable. *See L.A. by and through T.A. v. Royal Caribbean Cruises, Ltd.*, 17-CV-23184, 2018 WL 3093548, at *3 (S.D. Fla. June 22, 2018) (citing *Bullock v. Tamiami Trail Tours, Inc.*, 266 F.2d 326, 331 (5th Cir. 1959)).  Yet, pursuant to the Eleventh Circuit, "foreseeability is more appropriate ***after discovery*** at the summary judgment stage or at trial." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (emphasis added).  This binding precedent has been reiterated repeatedly by courts in this district.

For instance, in *Doe v. Royal Caribbean Cruises, Ltd.*, 11-23323-CIV, 2011 WL 6727959 (S.D. Fla. Dec. 21, 2011) ("*Doe v. RCCL*"), the Court noted that, "when the defendant's liability hinges on the question of foreseeability, ***such question is ordinarily considered a question of fact that cannot be decided on a motion to dismiss***." *Id.* at *4 (citing *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985) ("the issue of foreseeability is ordinarily a jury question where there is sufficient evidence of foreseeability to preclude a determination of the issue as a matter of law.")) (emphasis added).

Similarly, in *Doe v. NCL (Bahamas) Ltd.*, 11-22230-CIV, 2012 WL 5512347 (S.D. Fla. Nov. 14, 2012) ("*Doe v. NCL*") (Cooke, J.), this Court recognized that the issue of "***foreseeability is ordinarily a jury question*** where there is sufficient evidence of foreseeability to preclude a determination of the issue as a matter of law." *Id.* at *6 (citing *Carlisle*, 475 So.2d at 251) (emphasis added).

Further, most recently, in the case of *L.A. by and through T.A.*, the Court relied on both *Chaparro* as well as *Doe v. NCL* when it too found the issue of foreseeability improper to determine until "after discovery at the summary judgment stage or at trial[,]" and it denied the cruise line's motion to dismiss. *L.A. by and through T.A.*, 2018 WL 3093548, at *4.

While Royal Caribbean cites to H.*S. by & through R.S. v. Carnival Corp.*, 727 F. App'x 1003 (11th Cir. 2018), Plaintiffs refer the Court to the more recent Eleventh Circuit opinion

holding that the complaint's allegations of prior incidents (among others) were "enough to establish that the danger… was foreseeable, and indeed was known, to Royal Caribbean." *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1044 (11th Cir. 2019).  By that same token, Plaintiffs' allegations of Royal Caribbean's failure to follow the very standards that are meant to protect children (like Chloe) from falling out of windows despite Royal Caribbean's knowledge of such standards is also sufficient to establish foreseeability ***at this stage***, but it is ultimately an issue of fact for the jury to determine.

Accordingly, this Honorable Court should deny Royal Caribbean's motion in its entirety.

## V.  PLAINTIFFS' INCORPORATED MOTION FOR LEAVE TO AMEND ANY CLAIM THIS COURT DEEMS INADEQUATE.

Should this Honorable Court grant Royal Caribbean's motion or any portion thereof, Plaintiffs respectfully request leave to amend.  As Plaintiffs are unable to predict this Court's ruling, Plaintiffs are unable to attach any proposed amended pleading to their incorporated Motion for Leave to Amend Any Claim This Court Deems Inadequate, and respectfully requests consideration of Plaintiffs' incorporated motion insofar as this Court deems any portion of Plaintiffs' claims defective as alleged.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiffs*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By:   */s/ Michael A. Winkleman*
**MICHAEL A. WINKLEMAN**
Florida Bar No. 36719
mwinkleman@lipcon.com
**JASON R. MARGULIES**
Florida Bar No. 57916
jmargulies@lipcon.com
**JACQUELINE GARCELL**
Florida Bar No. 104358
jgarcell@lipcon.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By:  */s/ Michael A. Winkleman*
**MICHAEL A. WINKLEMAN**

## SERVICE LIST
*Wiegand v. Royal Caribbean Cruises Ltd.*
**Case No. 19-cv-25100-DLG**

**Jason R. Margulies, Esq.**
jmargulies@lipcon.com
**Michael A. Winkleman, Esq.**
mwinkleman@lipcon.com
**Jacqueline Garcell, Esq.**
jgarcell@lipcon.com
LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204
*Attorneys for Plaintiffs*

**Jerry D. Hamilton, Esq.**
jhamilton@hamiltonmillerlaw.com
**Carlos J. Chardon, Esq.**
cchardon@hamiltonmillerlaw.com
**Michael J. Dono, Esq.**
mdono@hamiltonmillerlaw.com
HAMILTON, MILLER & BIRTHISEL, LLP
150 SE 2nd Avenue, Suite 1200
Miami, Florida 33131
Telephone: (305) 379-3686
Facsimile: (305) 379-3690

**Stephen N. Zack, Esq.**
szack@bsfllp.com
**Laselve Harrison, Esq.**
lharrison@bsfllp.com
BOIES SCHILLER FLEXNER LLP
100 SE 2nd Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
Facsimile: (305) 539-1307
*Attorneys for Defendant*