# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY____ KP ____ D.C.

Aug 31, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - Miami

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 31, 2023

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  21-12506-GG
Case Style: Alan Wiegand, et al v. Royal Caribbean Cruises LTD.
District Court Docket No: 1:19-cv-25100-DLG

A copy of this letter, and the judgment form if noted above, but not a copy of the court's
decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision
was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion
was previously provided on the date of issuance.

Clerk's Office Phone Numbers
General Information:    404-335-6100    Attorney Admissions:      404-335-6122
Case Administration:   404-335-6135    Capital Cases:            404-335-6200
CM/ECF Help Desk:      404-335-6125    Cases Set for Oral Argument: 404-335-6141

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 21-12506

————————————

ALAN WIEGAND,
Individually and as Personal Representative of the
Estate of Chloe Wiegand, deceased minor,
KIMBERLY SCHULTZ-WIEGAND,
Individually and as Personal Representative of the
Estate of Chloe Wiegand, deceased minor,

Plaintiffs-Appellants,

*versus*

ROYAL CARIBBEAN CRUISES Ltd.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-25100-DLG

2                                                                21-12506

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion is-
sued on this date in this appeal is entered as the judgment of this
Court.

Entered: July 11, 2023

For the Court: David J. Smith, Clerk of Court

ISSUED AS MANDATE: August 31, 2023

[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12506

_____

ALAN WIEGAND,

Individually and as Personal Representative of the

Estate of Chloe Wiegand, deceased minor,

KIMBERLY SCHULTZ-WIEGAND,

Individually and as Personal Representative of the

Estate of Chloe Wiegand, deceased minor,

                                        Plaintiffs-Appellants,

*versus*

ROYAL CARIBBEAN CRUISES LTD.,

                                        Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-25100-DLG

———————————

Before JILL PRYOR and GRANT, Circuit Judges, and MAZE,[*] District Judge.

PER CURIAM:

Eighteen-month-old Chloe Wiegand escaped her grandfather's grip and fell to her death through an open cruise ship window. Chloe's parents sued Royal Caribbean Cruises, Ltd., alleging general negligence, negligent failure to maintain, and negligent failure to warn. The district court granted Royal Caribbean's motion for summary judgment on all three counts. We affirm the district court's dismissal of Count 3 (negligent failure to warn) but reverse the district court's dismissal of Counts 1 and 2 (general negligence and negligent failure to maintain, respectively) and remand on those counts.

## I. Background

The Wiegand family was set to cruise aboard Royal Caribbean's ship, *Freedom of the Seas*, in July 2019. Shortly after they

———————————

[*] Honorable Corey L. Maze, United States District Judge for the Northern District of Alabama, sitting by designation.

boarded, Chloe's mother and brother took Chloe to the H2O
Zone, a children's water park on Deck 11. Chloe's grandfather, Sal-
vatore Anello ("Anello"), joined soon after to watch over Chloe.

### A. Deck 11

This is the H2O Zone:





The Court circles an open window because this case turns on
whether (a) Royal Caribbean knew that a child could fall through

4                    Opinion of the Court                    21-12506

a fully-open window on Deck 11 and (b) whether Anello knew that the window was open and thus dangerous when he held Chloe in front of it.

### B.  The Fall

Security footage captured the minute and a half leading up to Chloe's fall. It starts with Anello following Chloe away from the pool and toward the long exterior glass wall. The Court circles the open window at issue in red and Chloe and Anello in green:



The duo crouched near a pole as another man walked up to the open window and leaned on the rail:



After the unidentified man left, Chloe ran toward the window with Anello trailing behind:

21-12506                 Opinion of the Court                    5



Chloe reached the glass wall first and stood on the ground. When
Anello reached the wall, he leaned over the handrail, the back of
which was 19 inches away from the metal windowsill as shown in
the adjoining picture:



About 12 seconds later, Anello reached down and picked up Chloe.



While it is unclear on the video, Anello testified that he put Chloe's feet on the windowsill, where he thought the glass was. About 36 seconds after Anello picked Chloe up, Chloe slipped from his grip and disappeared from the security footage.

Chloe fell about 150 feet onto the pier below. She died from the fall. Anello pleaded guilty to negligent homicide in Puerto Rico, where the ship was docked.

## C. The Litigation

Chloe's parents, Alan Wiegand and Kimberly Schultz-Wiegand, sued Royal Caribbean Cruises, Ltd., alleging (1) general negligence, (2) negligent failure to maintain, and (3) negligent failure to warn. The Wiegands alleged that Royal Caribbean breached its duty to Chloe, among other ways, by violating hospitality industry standards that would have required fall prevention devices on Deck 11 windows or would have prevented Deck 11 windows from opening more than four inches wide.

The district court granted Royal Caribbean's motion for summary judgment on all three counts. The district court found that Royal Caribbean was entitled to judgment on the duty element for all three counts because Royal Caribbean had no notice "of the risk-creating condition, which was Mr. Anello lifting the child through an open window." The court found that Royal Caribbean was also entitled to judgment on the proximate cause element for all three counts because Anello's criminal conduct was the unforeseeable, sole proximate cause of Chloe's death. The

court held that Royal Caribbean was also entitled to judgment on Count 3 (negligent failure to warn) because the fully-open window was an open and obvious danger. The Wiegands appeal.

## II.  Standard of Review

"This Court reviews *de novo* summary judgment rulings and draws all inferences and reviews all evidence in the light most favorable to the non-moving party." *Freixa v. Prestige Cruise Servs., LLC*, 853 F.3d 1344, 1346 (11th Cir. 2017) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1309 (11th Cir. 2011)). A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is improper if a reasonable jury could find for the non-moving party. *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019).

## III.  Discussion

Chloe was on navigable waters when she fell, so federal maritime law governs the substantive issues. *See Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020). The court relies on general principles of negligence law when analyzing maritime negligence claims. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). That means the Wiegands must prove four elements for each of their negligence-based claims: (1) Royal Caribbean had a duty to protect against a particular injury; (2) Royal Caribbean breached that duty; (3) the breach actually and proximately caused

8                    Opinion of the Court                    21-12506

Chloe's injury; and (4) Chloe suffered actual harm. *See Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020).

The district court held that the Wiegands could not prove the duty or proximate cause elements, meaning that none of the Wiegands' claims could survive summary judgment. The Court reviews both rulings in turn, mindful that it must view the evidence in a light most favorable to the Wiegands.

## A.  *Duty to Protect*

Under maritime law, a cruise line owes its passengers "a duty of reasonable care" under the circumstances. *Id.* (internal quotation marks omitted). That duty arises only when the cruise line has actual or constructive knowledge of the risk-creating danger that caused the Plaintiff's harm. *Id.* So Royal Caribbean's duty to Chloe "hinges on whether it knew or should have known" of the dangerous condition that caused her injury. *Id.*

In granting summary judgment, the district court held that "the true risk-creating danger here was Mr. Anello lifting a child up to an open window. The Plaintiffs have provided no . . . notice of that danger." The Wiegands argue this ruling is wrong for two reasons. First, the district court redefined the risk-creating danger that caused Chloe's injury. Second, the district court ignored a key piece of the Wiegands' evidence (*i.e.,* Elton Koopman's testimony) and failed to view the rest of the Wiegands' evidence in a light most favorable to the Wiegands. We address both arguments in turn.

### 1. *Defining the danger*

Plaintiffs are generally the masters of their complaints and can thus choose how to plead their theory of liability. *See Yusko v. NCL (Bahamas) Ltd.*, 4 F.4th 1164, 1170 (11th Cir. 2021). This Court routinely accepts the plaintiff's definition of the dangerous condition(s) that caused his injury. *See, e.g., Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1286 (11th Cir. 2015) ("[plaintiffs] argued that NCL created a dangerous condition by failing to properly maintain the pool deck where [one plaintiff] slipped and by failing to warn passengers of the danger"); *Guevara*, 920 F.3d at 717 ("[plaintiff] argued that NCL failed to adequately warn him of the dangerous condition posed by the step down").

In their complaint, the Wiegands pleaded that the dangerous conditions that caused Chloe's fall included (1) the lack of fall prevention devices on Deck 11 windows, (2) the lack of signs or visual clues to alert passengers which Deck 11 windows were open, and (3) the lack of policies that governed when Deck 11 windows could be opened.

The district court acknowledged that the Wiegands' evidence could prove that Royal Caribbean "was on notice of the risk of children independently accessing windows, and individuals falling from windows generally." But rather than finding that the Wiegands could therefore prove the duty element, the court redefined the risk-creating danger: "However, the true risk-creating danger here was Mr. Anello lifting a child up to an open window. The

Plaintiffs have provided no evidence showing [that] [Royal Caribbean] was on notice of that danger."

The district court erred. As discussed, this Court generally allows the plaintiff to define the risk-creating condition, and we see no reason to reject the Wiegands' pleaded theory that fully-open windows on Deck 11 created a risk. The district court's point that Anello *enhanced* the risk of fully-open windows by holding Chloe in front of a fully-open window is properly addressed in the proximate cause element, which allows Royal Caribbean to argue that Anello was a superseding cause in Chloe's death.[1] *See* Part III(B).

### 2. Evidence of notice.

Our discussion of who defines the risk is largely academic because the Wiegands presented three pieces of evidence that, when viewed in a light most favorable to the Wiegands, would allow a reasonable juror to find that Royal Caribbean not only knew that fully-open windows on Deck 11 posed a risk, it also knew about the risk of adults holding children in front of fully-open windows on Deck 11.

---

[1] Royal Caribbean makes the same point in its brief: "In the end, these arguments [about duty] ignore that Anello's actions of placing Decedent on a windowsill of an open window and letting the child slip from his hands were the sole proximate cause of the accident."

First is the testimony of Elton Koopman. Koopman worked as chief security officer on Royal Caribbean cruise ships, including *Freedom of the Seas*. Koopman testified that he saw adults holding children in front of open windows on Deck 11, and that he and other crew members discussed at safety meetings the problem of adults holding children in front of open windows and children climbing on chairs in front of open windows. Koopman testified that he saw adults hold children on the outer windowsill and that he told the adults to bring the children back in and close the window. And Koopman testified that Royal Caribbean knew about the risk of children falling through open windows and adults holding children in front of open windows.

The district court did not address Koopman's testimony in its order granting summary judgment. Royal Caribbean argues that Koopman is a disgruntled ex-employee who shares an attorney with the Wiegands, so his testimony should be discredited. But we can neither ignore nor disbelieve Koopman's testimony; we must view it in a light most favorable to the Wiegands because they are the party opposing summary judgment. *See Freixa*, 853 F.3d at 1346; Fed. R. Civ. P. 56(a). If a reasonable juror believes Koopman's testimony, that juror could find that Royal Caribbean knew about the risks posed by fully-open windows on Deck 11, including the risk of adults holding children in front of those windows. Royal Caribbean can question Koopman about bias and credibility at trial.

The second piece of evidence is the wood railing that keeps passengers 19 inches away from Deck 11's open windows:



Royal Caribbean's corporate representative testified that the rail was one of its "fall prevention measures" for "children and adults." The ship's captain, Frank Martinsen, confirmed that "the whole purpose" of the rail was "to prevent people from going overboard."

This Court has said that "[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous condition." *Amy*, 961 F.3d at 1308 (cleaned up). A reasonable juror could find that Royal Caribbean added the rail in front of Deck 11's windows because it knew that passengers, including children, could fall out of an open window.

The third piece of evidence is Royal Caribbean's Guest Conduct Policy, which prohibited passengers from "[s]itting, standing, laying or climbing on, over or across any exterior or interior railings or other protective barriers[.]" We have said that "warning passengers about a danger posed by a condition" can be evidence of notice, if there is "a connection between the warning and the danger." *Amy*, 961 F.3d at 1309. And we have held that evidence that a cruise line warned passengers not to "'climb up rails', 'try to sit on them', [or] 'try to get selfies or lean over' them because 'accidents can happen'" was "enough to withstand summary judgment as to notice." *Id.* The same is true here; a reasonable juror could find that Royal Caribbean's written policy against climbing on or over railings is proof that Royal Caribbean knew that passengers could fall overboard despite the railing.

In sum, we find that, when viewed in a light most favorable to the Wiegands, the combination of Koopman's testimony, the railing in front of Deck 11's windows, and Royal Caribbean's Guest Conduct Policy instructing passengers not to climb on or over the railing is enough to withstand summary judgment as to notice. The district court erred in holding otherwise.

## B.  Proximate Cause

Under superseding cause doctrine, even if the Wiegands can prove that Royal Caribbean's failure to mitigate a known risk substantially contributed to Chloe's death, Royal Caribbean is not liable if Chloe fell due to "a later cause of independent origin that was not foreseeable." *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 837

(1996). The district court held that Anello's conduct was an unforeseeable, superseding cause that broke the chain between any negligence by Royal Caribbean and Chloe's death.

The Wiegands argue that the district court erred for two reasons. First, they argue that the superseding cause doctrine does not apply when the superseding cause (Anello here) is not a party to the litigation. Second, they argue that they presented enough evidence of foreseeability to make superseding cause a question for the jury. We disagree with the Wiegands' first argument but agree with the second.

### 1. Third party as superseding cause

The Wiegands rightly note that, in *Exxon*, the plaintiff ship captain was found to be the superseding cause of the accident, and the Supreme Court held that the captain and his employer (Exxon) could not recover any damages. *Id.* at 840-41. But the plaintiffs' inability to recover did not spring from the captain's status as a party. Rather, the plaintiffs' case failed because the captain's negligence broke the causal chain between the defendant's negligence and the plaintiffs' injuries. *Id.* at 837-39. Put another way, the plaintiffs could not recover from the defendant because they could not prove an essential element of their case against the defendant (*i.e.*, causation).

For more proof that a third party can break the causal chain, we need only look to the same admiralty treatise that the Supreme Court used to define the doctrine. *See id.* at 837-38 (quoting 1 T.

Schoenbaum, *Admiralty and Maritime Law*, § 5-3 (2d ed. 1994)). The current version of Professor Schoenbaum's treatise—which has been updated many times since *Exxon*—states that "[i]n some cases, the defendant may be at fault, but *the plaintiff or a third party* may have committed an act which supersedes, in terms of cause, the fault of the defendant." 1 T. Schoenbaum, *Admiralty and Maritime Law*, § 5:5 (6th ed. 2022) (emphasis added).

In short, Anello's status as a third party does not affect whether the case can go to the jury.

## 2. Foreseeability

We now turn to whether the Wiegands presented enough evidence of foreseeability to allow a jury to decide whether Anello's actions were a superseding cause of Chloe's fall. Anello pleaded guilty to negligent homicide for dropping Chloe. The district court correctly cited our statement that, "[g]enerally, independent illegal acts of third persons are deemed unforeseeable and therefore the sole proximate cause of the injury, which excludes the negligence of another as a cause of injury." *Wiegand v. Royal Caribbean Cruises Ltd.*, Case No. 19-CV-25100-DLG, 2021 WL 3204459, at *4 (S.D. Fla. July 13, 2021). (quoting *Decker v. Gibson Prod. Co. of Albany*, 679 F.2d 212, 215 (11th Cir. 1982)). Of course, the word "generally" means there are exceptions. Our next sentence in *Decker* named the exception: "In some cases, however, criminal acts have been held to be foreseeable." *Decker*, 679 F.2d at 215. If the superseding criminal act was foreseeable, then the criminal act does not break the causal chain between the

defendant's negligence and the plaintiff's injury. *See also* Restate-ment (Second) of Torts § 442B cmt. c ("tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm").

The district court held that "Plaintiffs have presented insuf-ficient evidence to circumvent [the] presumption" that Anello's criminal act was the sole proximate cause of Chloe's injury. Re-garding foreseeability, the district court said that "the Plaintiffs have failed to present evidence indicating that the Defendant knew or should have known that there was a risk of an adult lifting a child over the guardrail and through an open window."

This ruling suffers from the same problem as the district court's ruling on notice: it ignores Elton Koopman's testimony. Koopman, the ship's chief security officer until 2018, testified that he watched adults "lift children up to the railing" in front of an open window "so that they could feel the breeze." He testified that he watched adults extend children from the rail to the windowsill when the window was open, and he instructed those adults to bring the children "back into the vessel" and then "close the win-dow." And Koopman testified that he voiced his concerns about the open windows at full team meetings when the ship returned to port.

While Royal Caribbean can raise Koopman's bias and credi-bility at trial, we cannot ignore his testimony. "Foreseeability is a question of fact," *Doe v. United States*, 718 F.2d 1039, 1042 (11th

Cir. 1983), and we must view Koopman's testimony in the light most favorable to the Wiegands, *see Freixa*, 853 F.3d at 1346; Fed. R. Civ. P. 56(a). Under that standard, a reasonable juror could find that Anello's superseding act of holding Chloe either on the rail or the windowsill was foreseeable to Royal Caribbean. As a result, a reasonable juror could find that Anello did not break the causal chain between Royal Caribbean's negligence (if any) and Chloe's death. The district court erred when it held otherwise.

## C. *Open and Obvious*

Our rulings in Parts (A) and (B) mean that a jury must decide Counts 1 and 2 (negligence and negligent failure to maintain). But the Wiegands must clear another hurdle on Count 3, which alleges that Royal Caribbean negligently failed to warn passengers about the danger posed by fully-open windows on Deck 11. "An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious. In evaluating whether a danger is 'open and obvious' we are guided—as in general tort law—by the 'reasonable person' standard." *Carroll*, 955 F.3d at 1264 (citations omitted). The Court applies this standard objectively, *id.*, meaning that we give no deference to Anello's subjective belief.

The district court held that a reasonable person in Anello's shoes would have known that the window was open and would have appreciated the danger of holding a toddler near an open window 150 feet above the surface. We agree.

Anello testified that he did not know that the window was open and thus believed Chloe was not in danger. Typically,

Anello's testimony would create a question of fact that requires a jury trial. But this issue is atypical for two reasons. First, as discussed, we must view the evidence objectively to determine whether a reasonable person would have appreciated the danger, not whether Anello subjectively did. *Id.* at 1264. Second, we have video, and the Supreme Court has held that a factual dispute is not 'genuine' if video evidence "blatantly contradict[s]" one party's version of the facts to the point that "no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). We therefore look to the videotape to determine whether a reasonable person would have perceived that the window was open and thus presented a risk to Chloe.

Two details in the video show that a reasonable person would have known that the window was open and thus presented a risk. First, the tinted coloring of the windows make it apparent which windows were open and which windows were closed:



When counsel showed Anello the video at his deposition, Anello testified that he could see the difference in color and that he could now tell that the window he and Chloe approached was open. Photographic evidence confirms that a reasonable person would have

noticed the tinting difference when approaching the windows from the direction Anello and Chloe did:



Second, during the minute and a half of footage, three people (Chloe, Anello, and an unidentified man) approached the same spot on the glass wall—and *only* that spot. First, the unidentified man drank a bottle while standing over the rail and looking outside:

 

Here is Anello picking up Chloe in the same spot, about 40 seconds later:

20                    Opinion of the Court                    21-12506

 

The odds that everyone randomly chose the same spot along a wall of closed glass windows is exceedingly thin. Viewing the video objectively, a reasonable juror would conclude that everyone chose that spot because the window was open, so you could see and hear through the opening as you leaned over the rail.

Finally, photographic evidence shows that an objective person who leaned over the railing as Anello did for 12 seconds before he picked up Chloe, then reached for the glass window after he picked up Chloe, would have realized that the window was open because otherwise he would have touched glass:

  

In sum, objective video and photographic evidence "blatantly contradicted" the Wiegands' position that a reasonable person could not tell that the window was open, so the district court properly relied on that evidence to grant summary judgment on Count 3. *Id.*

## IV. Conclusion

Our opinion is limited to finding that, when all the evidence is viewed in a light most favorable to the Wiegands, the Wiegands offered enough evidence to survive summary judgment on Counts 1 and 2. We make no judgment on the merits of any issue, including whether Royal Caribbean had notice of danger, whether Royal Caribbean breached a duty (an issue not raised here), and whether Anello's actions proximately caused Chloe's fall.

Based on this limited finding, we **REVERSE** the district court's grant of summary judgment on Counts 1 and 2, and **AFFIRM** the district court's grant of summary judgment on Count 3. We **REMAND** the case to the district court on Counts 1 and 2.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 11, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  21-12506-GG
Case Style:  Alan Wiegand, et al v. Royal Caribbean Cruises LTD.
District Court Docket No:  1:19-cv-25100-DLG

All counsel must file documents electronically using the Electronic Case Files ("ECF") system,
unless exempted for good cause. Although not required, non-incarcerated pro se parties are
permitted to use the ECF system by registering for an account at www.pacer.gov. Information
and training materials related to electronic filing are available on the Court's website.
Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been
entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with
FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for
filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise
provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is
timely only if received in the clerk's office within the time specified in the rules. Costs are
governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for
attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested
Persons a complete list of all persons and entities listed on all certificates previously filed by
any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be
reheard must be included in any petition for rehearing or petition for rehearing en banc. See
11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming
compensation for time spent on the appeal no later than 60 days after either issuance of mandate
or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via
the eVoucher system. Please contact the CJA Team at (404) 335-6167 or
cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher
system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at
www.ca11.uscourts.gov.

Clerk's Office Phone Numbers

| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs